IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL DAVID COLLINS, §
§
Plaintiff, §
§
V. § CIVIL ACTION NO. H-16-3475
§
NANCY A. BERRYHILL, ACTING §
COMMISSIONER OF THE SOCIAL §
SECURITY ADMINISTRATION, §
§
Defendant. §

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending in this appeal of an adverse final decision of the social security administration are the parties' cross motions for summary judgment (Document Nos. 16 & 17). Having considered the motions, each sides' response to the other's motion (Document Nos. 18 & 19), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court[1] ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 17) is DENIED, and this matter is REMANDED to the Commissioner for further proceedings.

## I.     Introduction

Plaintiff Michael David Collins ("Collins") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final

---

[1] On March 7, 2017, pursuant to the parties consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 12.

decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income benefits (SSI). In this appeal Collins contends that: (1) "The ALJ erred by failing to follow the treating physician rule;" (2) "The ALJ erred by failing to consider the combination of Plaintiff's impairments when determining he did not meet a listing;" (3) "The RFC determination is not supported by substantial evidence;" and (4) "The ALJ's Step 5 determination is not supported by substantial evidence because it was based on an incomplete hypothetical." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

## II.     Administrative Proceedings

On or about May 27, 2015, Collins filed an application for SSI, claiming that he had been disabled since March 26, 1994, as a result of Hepatitis C, HIV, and bipolar disorder (Tr. 156-159; 181). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Collins requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Patricia C. Henry, held a hearing on June 8, 2016, at which Collins amended his disability onset date to May 27, 2015 (the date he filed his SSI application). Following the administrative hearing, at which Collins' claims were considered *de novo* (Tr. 37-62), the ALJ issued her decision on July 19, 2016, finding Collins not disabled (Tr. 17-30).

Collins sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or

2

conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On September 20, 2016, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's decision thus became final.

Collins filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

## III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts

3

in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

4

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the

claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Collins had not engaged in substantial gainful activity since May 27, 2015, the date he filed his SSI application. At step two, the ALJ found that Collins had, as severe impairments: peripheral neuropathy, status-post left leg fracture and repair, affective disorder, anxiety disorder/posttraumatic stress disorder, personality disorder, and schizoaffective disorder. At step three, the ALJ concluded that Collins did not have an impairment or combination of impairments that met or medically equaled a listed impairment, including Listings 1.06, 11.14, 12.03, 12.04, 12.06 and 12.08. The ALJ then, prior to consideration of step four, determined that Collins had the residual functional capacity ("RFC") to perform light work, except that he "was further limited to occasional postural maneuvers such as kneeling, stooping, crouching, crawling, and climbing ramps or stairs and must avoid climbing ladders, ropes, or scaffolds. [He] was also limited to only occasional interactions with supervisors, coworkers, and members of the general public [ ] and could perform detailed but not complex tasks." At step four, the ALJ determined that Collins had no past relevant work. At step five, using the RFC she had formulated, and based on the testimony of a vocational expert, the ALJ determined that Collins could perform work that exists in significant numbers in the national economy, including assembler, office cleaner, and garment sorter, and that Collins was, therefore, not disabled.

In this appeal, Collins maintains that the ALJ erred in her consideration of his treating physicians' opinions, erred in failing to consider all his impairments collectively in determining whether he met a listing, including Listing 14.08(K), erred in determining his RFC, and erred in the hypothetical she posed to the vocational expert.

In determining whether there is substantial evidence to support the ALJ's decision, the Court

generally considers four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126. However, because Collins' issues in this appeal are somewhat discrete and he does not make a comprehensive "substantial evidence" argument, consideration of those four factors is not particularly helpful and this appeal will not be decided by reference thereto.

## V.     Discussion – Treating Physician Opinions

Collins' first claim on appeal is that the ALJ erred in her consideration of his treating physicians' opinions. According to Collins, the ALJ failed to fully and properly consider the opinions of Dr. Sims, his treating internal medicine physician, and the opinions of Dr. Silva, his treating psychiatrist.

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician. Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

(1)     the physician's length of treatment of the claimant,;

(2)     the physician's frequency of examination,

(3)     the nature and extent of the treatment relationship,

(4)     the support of the physician's opinion afforded by the medical evidence of record,

(5)     the consistency of the opinion with the record as a whole; and

7

(6)     the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).  While opinions of treating physicians need not

be accorded controlling weight on the issue of disability, in most cases such opinions must at least

be given considerable deference.  Social Security Rule 96-2p provides in this regard:

> [A] finding that a treating source medical opinion is not well supported by medically
> acceptable clinical and laboratory diagnostic techniques or is inconsistent with the
> other substantial evidence in the case record only means that the opinion is not
> entitled to "controlling weight," not that the opinion should be rejected.  Treating
> source medical opinions are still entitled to deference and must be weighed using all
> of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating
> sources's medical opinion will be entitled to the greatest weight and should be
> adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490 (July 2, 1996).  In this Circuit, as in most

others, before a medical opinion of a treating physician can be rejected, the ALJ must consider and

weigh the six factors set forth in 20 C.F.R. § 404.1527(d).  *Newton*, 209 F.3d at 456.  Unless good

cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating

physician, especially when the consultation has been over a considerable length of time, should be

accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981); *see also*

*Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is

familiar with the claimant's impairments, treatments and responses should be accorded great weight

in determining disability.").  In addition, a specialist's opinion is generally to be accorded more

weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore*

*v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).  For the ALJ to give deference to a medical opinion,

however, the opinion must be more than conclusory and must be supported by clinical and laboratory

findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078

(5th Cir. 1981). In the end, however, it is the ALJ who "has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

Here, Dr. Sims opined in a "Physical Assessment" he completed on August 3, 2015, that Collins could walk less than one block, could sit for only two to three hours out of an eight hour workday, could stand and/or walk only one hour out of an eight hour work day, and would need to take multiple, unscheduled breaks during an eight hour workday. (Tr. 383-384). Dr. Silva, in a "Mental Capacity Assessment" completed on May 2, 2016, opined that Collins had marked limitations in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," the "ability to make simple work-related decisions," and the "ability to ask simple questions or request assistance," and extreme limitations in the "ability to sustain an ordinary routine without supervision," the "ability to work in coordination with or in proximity to others without being distracted by them," the "ability to complete a normal workday without interruptions from psychologically based symptoms," the "ability to complete a normal workweek without interruptions from psychologically based symptoms," the "ability to perform at a consistent pace with a standard number and length of rest periods," the "ability to interact appropriately with the general public," the "ability to accept instructions and respond appropriately to criticism from supervisors," the "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," the "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," the "ability to respond appropriately to changes in the work setting," the "ability to be aware of normal hazards and take appropriate precautions," the "ability to travel in unfamiliar places or use public transportation," and the "ability to set realistic goals or make plans independently of others." (Tr. 457-459). The ALJ essentially

rejected all of these opinions on the basis that they were not supported by the treatment records.

With respect to Dr. Sims' opinions, the ALJ wrote:

> As for the opinion evidence, James Sims, M.D., the claimant's medical doctor at St. Hope Foundation, authored a medical source statement on August 3, 2015 noting the claimant had peripheral neuropathy and asymptomatic HIV. According to Dr. Sims, the claimant could not sit more than 2-3 hours and stand and/or walk more than 1 hour in an 8-hour day. Dr. Sims also opined the claimant would miss [ ] work more than 4 times a month.

> The undersigned gave little weight to Dr. Sims['] opinion because his opinion on the claimant's sitting, standing, and walking were unsupported by the treatment records from St. Hope Foundation. Although the claimant did complain of some swelling in August 3, 2015 because he "recently started working a lot and doing a lot of standing," the physical exam showed the claimant had normal muscle strength in both feet. A subsequent physical exam on March 21, 2016 continued to [s]how the claimant had normal muscle tone and an intact gait. Moreover, the claimant's testimony about his daily activities, discussed above, suggest he was capable of a higher level of functioning than what Dr. Sims opined.

(Tr. 26) (internal references omitted). As for Dr. Silva's opinions, the ALJ also gave them little

weight as follows:

> Sriya Silva, M.D., the claimant's psychiatrist at St. Hope Foundation, authored a medical source statement on May 2, 2016 opining the claimant had slight limitations with understanding, remembering, and carrying out simple instructions but moderate limitations with understanding, remembering and carrying out detailed instructions. She also opined the claimant had marked limitations in his ability to maintain attendance, extreme limitation in his ability to sustain an ordinary routine; marked to extreme limitations in activities involving sustained concentration and persistence; marked to extreme limitations in social functioning; and extreme limitations in adaptation.

> The undersigned gave little weight to Dr. Silva's opinions because there were generally unsupported by the evidence as a whole. For instance, although Dr. Silva opined the claimant had marked to extreme limitations in social interactions, the claimant's statements revealed he was generally able to get along with friends, family and neighbors. He was also able to function to some degree in public, as evidenced by his ability to go grocery shopping with his mother. In fact, as stated earlier, the claimant revealed he could "get along well with everyone if he took his meds. Dr. Silva also opined the claimant had marked to extreme limitations in activities

10

involving sustained concentration and persistence. However, the claimant showed he was able to carry out most of his activities of daily living, use a computer to play games and communicate with others, and follow along with television programs. Dr. Silva's opinion that the claimant had extreme limitations in adaption, including the ability to set realistic goals or make plans independently of others, was also unsupported by the record. For instance, the treatment notes have consistently showed the claimant retained good judgment and insight.

(Tr. 27) (internal references omitted).

The ALJ's rejection of Drs. Sims and Silva's opinions does not adequately comport with the requirements of *Newton* or SSR 96-2p. In making that determination it is important to note that the ALJ relied most heavily on the opinions of the state agency medical consultants, who reviewed Collins' medical records in September and November of 2015, and the August 2015 findings and opinions of the consultative examiners, Drs. Mangapuram (internal medicine) and Garcia (mental status exam). The ALJ's simplistic assessment that the opinions of the state agency consultants were "supported by the physical exams of record [ ] and the claimant's statements about his daily activities," and the opinions of Collins' treating physicians (Drs. Sims and Silva) were not, disregards significant evidence in the record. For example, Dr. Mangapuram, who conducted a consultative internal medicine examination of Collins on August 6, 2016, found that Collins could "lift, carry and handle objects less than 10 lbs," that he "ambulates slowly without any assistive devices," and that he "cannot do toe and heel walking, can do half squatting, cannot do hopping, [and] cannot do tandem and straight walking "due to pain in both feet and legs." (Tr. 389). Those physical examination findings and opinions are somewhat consistent with Dr. Sims' opinion that Collins cannot stand or walk for long periods of time due to his peripheral neuropathy. In addition, Dr. Garcia, who conducted a consultative mental status examination of Collins on August 22, 2015, found that while Collins' thought processes were normal and his judgment and insight were intact,

his "[a]bstract thinking was slightly impaired," "his mood appeared relatively dysphoric," his "affect appeared consistent with a depressed mood," and his "working memory abilities appeared impaired." (Tr. 417-419). Those findings are not entirely inconsistent with the opinions of Collins' treating psychiatrist, Dr. Silva, about Collins' ability to maintain concentration, persistence and pace *in a work setting* or Collins' social functioning difficulties *in a work setting*. The ALJ makes much of Collins' testimony at the hearing that he can occasionally help his mother around the house, can occasionally go to the grocery store with her, can watch some television and use the computer to message friends and play games, and is able to get along with friends, family and neighbors. But, none of that testimony, or any other evidence about Collins' ability to function in a home, or family-supported setting, calls into question Dr. Silva's opinions about Collins' functioning ability in a normal work-like setting, and it is that functioning ability in a work-like setting that Dr. Silva opined about in the May 2016 Mental Capacity Assessment. Because the ALJ makes no such distinction, and because it is Collins' ability to engage in substantial gainful activity *in a work setting* that is important, it cannot be said on this record that the ALJ gave sufficient consideration to the opinions of Collins' treating physicians. Remand is therefore warranted.

## VI.     Discussion – Combination of Impairments and Listing 14.08(K)

Collins' second claim in this appeal is that the ALJ failed to fully and properly consider all of his impairments, and failed to consider whether he met, at step three, Listing 14.08(K).

The record shows that in addition to the severe impairments found by the ALJ, Collins has, and no one disputes that he has, HIV, Hepatitis B and Hepatitis C. The ALJ found, as follows, that those impairments were not severe:

The claimant has been diagnosed with human immunodeficiency virus (HIV) infection since roughly May 1990. However, the claimant admitted that his viral load was undetectable and indicated he was compliant with his medication and medical treatment. This was supported by treatment records from St. Hope Foundation, which showed the claimant's HIV "RNA [was] not detected." Additionally, the claimant's CD-4 count rose from 358 on June 1, 2015 to 367 on August 4, 2015 to 391 on March 21, 2016, confirming there was no progression in the claimant's HIV infection. In sum, the claimant's HIV was asymptomatic.

The claimant also had hepatitis B (HBV) and hepatitis C (HCV). The record showed the claimant's HCV was previously treated in prison with interferon and laboratory work on June 12, 2015 confirmed the claimant's HCV infection resolved. Specifically, the June 12, 2015 laboratory findings also showed the claimant had "a nondetectable viral load for both HCV and HBV." There was no medical evidence that these impairments caused any functional limitation.

Therefore, the undersigned [finds] the claimant's HIV, HCV, and HBV did not cause more than minimal limitation in the claimant's ability to perform basic work-related activities and were nonsevere.

(Tr. 20) (internal document references omitted). Collins does not challenge in this appeal the ALJ's severity determination, but does argue that the ALJ failed to fully and properly consider his HIV and Hepatitis, and the impairments that may be related thereto, in determining whether he met a listing, including, in particular, Listing 14.08K. That Listing provides for presumptive disability as follows:

Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A-J, but without a requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental impairments) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
1. Limitation of activities of daily living;
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

The record shows that Collins has HIV, but is asymptomatic, and has a nondetectable viral load for both Hepatitis B and Hepatitis C. The record also shows that Collins has "peripheral neuropathy" that is severe, as found by the ALJ. Given that record evidence, as well as Collins' documented complaints of pain, Listing 14.08K comes into play if Collins has marked limitations in "activities of daily living" or marked limitations in "maintaining social functioning" or marked limitation in "completing tasks in a timely manner due to deficiencies in concentration, persistence or pace." It is here that the ALJ's consideration of the treating physician opinions segues into the consideration of Listing 14.08K.

There are no expert medical opinions in the record that directly "fit" the marked limitations requirement of Listing 14.08K. But, many of Dr. Silva's opinions could support a determination that Collins has marked limitations in "maintaining social functioning" or marked limitation in "completing tasks in a timely manner due to deficiencies in concentration, persistence or pace." Because, as set forth above, further consideration of the treating physicians' opinions is warranted, such consideration should also include a specific determination as to whether Collins' impairments meet or are functionally equivalent to Listing 14.08K.

## VII.  Conclusion and Order

Based on the foregoing and the conclusion that the ALJ erred in her consideration of the treating physician opinions, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 17) be DENIED, and this matter is REMANDED to the REMANDED to the Social Security Administration pursuant to 42 U.S.C.

§ 405g, for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 1ˢᵗ day of February, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE